UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TOWN OF GRAFTON,<br>            Plaintiff,<br><br>     v.<br><br>PULTE HOMES OF NEW ENGLAND, LLC,<br>and HILLTOP FARMS DEVELOPMENT, LLC.<br>            Defendants. | CIVIL ACTION<br>NO. 12-10524-TSH |

## ORDER

**November 4, 2013**

Hennessy, M.J.

By Order of Reference dated September 24, 2013, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #44), this matter was referred to me for a ruling on the Plaintiff Town of Grafton's (the "Town") Motion to Enforce Deposition Subpoena (Docket #35). This matter is now ripe for adjudication. For the reasons that follow, the Motion to Enforce the Deposition Subpoena is ALLOWED subject to the Protective Order.

I.  BACKGROUND

On February 17, 2012, the Town filed suit against Pulte Homes of New England, LLC ("Pulte") and Hilltop Farms Development, LLC ("Hilltop") in Massachusetts Superior Court. (Docket #1-1 at 6). The Town asserted several claims including breach of contract and violation of Massachusetts General Laws Chapter 93A. These claims are based on the alleged breach of a Regulatory Agreement dated June 28, 2004 (the "Agreement") between Hilltop and the Salem Five Cents Savings Bank governing a 256-unit affordable housing development (the "Project"),

of which the Town is a beneficiary. (Id. at 11). Pursuant to the Agreement, Hilltop must pay to the Town any profits from the Project exceeding 20 percent of the Project's total development costs, for deposit in the Town's affordable housing trust fund. (Id.). The Town alleges that the Project's profits exceeded 20 percent by at least $17 million, but that Hilltop has failed and refused to pay any of this amount to the Town. (Id.).

The facts underlying the Town's claim were uncovered by the Office of the Massachusetts Inspector General ("OIG"), which provided the Town with a 25-page report on November 7, 2011, summarizing a two-year investigation into the Project. (Id. at 14). Through the course of the OIG's investigation of the Project, the OIG exercised its summons authority to obtain documents from the Town, Hilltop, and Pulte, in addition to several other organizations not parties to the present litigation. (Docket #43 at 5). The report concluded that Pulte and Hilltop improperly withheld between $8 and $17 million in excess profits from the Town. (Docket #1-1 at 14).

On March 22, 2013, Pulte and Hilltop removed the action to federal court on the basis of diversity jurisdiction. (Docket #1).

On November 9, 2012, the Town served a deposition subpoena on the Inspector General, requiring his presence at a deposition on November 19, 2012. (Docket #35 at 20). The subpoena also directed the Inspector General to bring to the deposition "[a]ll documents concerning your office's investigation into Chapter 40B developer profits from the Hilltop Farms project in Grafton, Mass., which was the subject of your office's report to the Grafton Board of Selectmen dated November 7, 2011, excepting any privileged documents including any work product." (Id.). The OIG is not a party in the suit. In July of 2013, the OIG explained to the Town that, due to the statutory criminal penalties that attach to OIG employees who disclose the OIG's

statutorily confidential documents, it would not be able to provide records without a court order and without the court's entry of a protective order. (Docket #43 at 2). After the OIG notified the Town that it would not produce the requested documents even with a protective order, the Town filed the present motion on August 28, 2013. (Docket #35). In the event the motion is granted, the parties have submitted an agreed-upon protective order that they ask the Court to endorse. (Id. at 8-13).

II.     STANDARD[1]

> Unless otherwise ordered by the court,
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, differs significantly between parties and nonparties. The "relevance" standard of Rule 26 does not apply to nonparties. Bio-Vita, Ltd. v. Biopure Corp., 138 F.R.D. 13, 17 (D. Mass. 1991). "To obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." Bio-Vita, 138 F.R.D. at 17; see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a

---

[1] In its papers, the OIG makes reference to the standard for quashing or modifying a subpoena under Federal Rule of Civil Procedure 45(c)(3)(A)(iii). That provision reads, in relevant part, "On timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" However, that standard is inapplicable here. The OIG has not filed a motion to quash or modify, a prerequisite to relief under Rule 45(c)(3)(A).

different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

III.   ANALYSIS

A.   Waiver of Privilege with Respect to Certain Documents

The OIG agrees, subject to entry of the proposed protective order, to waive any privilege with respect to documents the litigants themselves have produced to the OIG and with respect to any documents any consenting entity has produced to the OIG. (Docket #43 at 8). The Court shall enter the proposed protective order and hereby ALLOWS the motion with respect to any documents a consenting entity has produced to OIG.

B.   Disputed Documents

There are two non-consenting parties. With respect to documents that have been produced by these non-consenting parties, the OIG opposes the motion on the basis that the subpoenaed documents are privileged pursuant to state common law investigatory privilege. (Docket #43 at 1). The OIG asserts that disclosure of these documents would hamper the OIG's ability to conduct future investigations by disclosing its investigative techniques. (Id.).

The OIG has a broad mandate to prevent and detect fraud, waste, and abuse in the expenditure of public funds. Mass. Gen. Laws ch. 12A, § 7. In fulfillment of these duties, the Inspector General "may request the production, on a voluntary basis, of testimony or documents from an individual firm or non-governmental entity which relate to his duties and responsibilities." Mass. Gen. Laws ch. 12A, § 9. The Inspector General may also "require by summons, the production of all records, reports, audits, reviews, papers, books, documents, recommendations, correspondence and any other data and material relevant to any matter under audit or investigation[.]" Id. Any documents provided shall not be made public "until such time

as it is necessary for the inspector general to do so in the performance of his duties." Id. Production of materials pursuant to summons "shall be governed by the same provisions with reference to secrecy which governs proceedings of a grand jury." Id. "All records of the office of inspector general shall be confidential unless, it is necessary for the inspector general to make such records public in the performance of his duties[.]"[2] Mass. Gen. Laws ch. 12A, § 13. Employees of the OIG are subject to the same confidentiality mandates as the Inspector General, and should they violate these mandates they "shall be punished by imprisonment in a jail or house of correction for not more than six months or by a fine of not more than one thousand dollars." Id.

Pursuant to Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." See Krolikowski v. Univ. of Mass., 150 F. Supp. 2d 246, 248 (D. Mass. 2001) ("According to Fed. R. Evid. 501, if federal substantive law controls a civil case, federal common law would control the question of privilege. If however, state substantive law controls, as in diversity cases, a federal court is to use applicable state law privilege."). The instant case was removed to federal court on the basis of diversity jurisdiction. (Docket #1). The action involves no federal claims. (See Docket #1-1 at 11-24). Therefore, state law governs the question of privilege.

"Unless otherwise required by law, information given to governmental authorities in order to secure the enforcement of the law is subject to disclosure only within the discretion of the governmental authority." Massachusetts Guide to Evidence, § 515 (Supreme Judicial Court, 2013). The Massachusetts Supreme Judicial Court explained the rationale for this rule thusly:

---

[2] The OIG asserts that, while section 13 of chapter 12A of the Massachusetts General Laws may not confer a privilege on the documents at issue, it does offer the documents other protection under Federal Rule of Civil Procedure 45(c)(3)(A)(iii) that would prohibit them from being subject to discovery. (Docket #45 at 5 n.3). However, as previously discussed, the standard of Rule 45(c)(3)(A)(iii) is inapplicable here.

> It is the duty of every citizen to communicate to his government any information which he has of the commission of an offence against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.

Worthington v. Scribner, 109 Mass. 487, 488-89 (1872); see Dist. Att'y v. Flatley, 419 Mass. 507, 510 (1995) (stating that no subsequent Massachusetts decision modifies or abrogates Worthington). Thus, the documents subpoenaed are absolutely protected from disclosure by the state investigatory privilege, which can be waived only by the OIG.[3, 4]

The Town cites Bliss v. Fisher, 743 F. Supp. 2d 25 (D. Mass. 2010), in support of its argument that the OIG waived whatever privilege that may exist by posting its report on its website.[5] (Docket #35 at 5). "Voluntary disclosure of privileged material results in a waiver." Bliss, 743 F. Supp. 2d at 29. In Bliss, Judge Harrington ruled that the OIG had waived any applicable privilege because it has already disclosed substantial information about its investigation by posting a comprehensive report on its website and because OIG investigators

---

[3] The Massachusetts Legislature has adopted a public records statute, which requires public access to various records and documents in the possession of public officials unless otherwise exempt. Mass. Gen. Laws ch. 66, § 10. However, "[a]ll records of the office of inspector general . . . shall not be public records as defined in section seven of chapter four." Mass. Gen. Laws ch. 12A, § 13.

[4] The Town cites Bliss v. Fisher, 743 F. Supp. 2d 25 (D. Mass. 2010), in support of its position that the OIG records are not privileged. However, in Bliss, the court's jurisdiction was based on a civil rights claim brought pursuant to 42 U.S.C. § 1983, and, therefore, federal law, including the federal common law of privilege, was applied. Id. at 28. Additionally, the Bliss court did not have before it an assertion of state investigatory privilege. The Bliss court based its analysis on the assumption that the OIG's confidentiality statute conferred a privilege. Id. That position is not asserted here.

[5] The OIG "may issue special reports relating to the prevention or detection of fraud, waste and abuse in programs and operations within the jurisdiction of the Office. Such special reports shall be disseminated to the public[.]" 945 CMR 1.10(c).

6

had previously testified concerning that investigation in a separate case. Id. at 29-30. The Court agrees with Judge Harrington's analysis and finds that the OIG has waived the blanket assertion of privilege. See id. The OIG may still invoke the privilege doctrine but must do so on a "question-by-question basis."[6] Id. at 29.

Therefore, with respect to the disputed documents, the Court ALLOWS the motion.

C. Work Product

In its response to the present motion, the OIG states that it understood that the subpoena at issue does not request the internal work product of OIG employees that led to the OIG report and that the Town agrees. (Docket #43 at 3 n.1). However, the OIG asserts that Pulte and Hilltop have indicated that they will subpoena the OIG's internal investigative documents should the OIG not produce them now. (Id.). The OIG asserts that this work product is protected from disclosure by federal and state privileges. (Id. at 3). The Court will not address this issue as the matter is not ripe for review at this juncture. The parties are not arguing that the subpoena at issue applies to work product and the Court will not issue an advisory opinion on the validity of a potential subpoena.

D. Testimony of Inspector General Glenn A. Cunha

The OIG asserts that Inspector General Glenn A. Cunha's testimony is neither relevant to the subject matter of the litigation nor reasonably calculated to lead to the discovery of admissible evidence because Inspector General Cunha did not take office until August of 2012,

---

[6] This Court recognizes that "Courts have held in the context of executive privilege that 'release of a document only waives these privileges for the document or information specifically released, and not for related materials.'" Puerto Rico v. United States, 490 F.3d 50, 66 (1st Cir. 2007) (quoting In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997)). However, in the absence of a question-by-question assertion of privilege, the Court cannot determine what information may have previously been specifically released in the report.

following the conclusion of the investigation. (Docket #43 at 11-12). Thus, the OIG asserts, the motion should be denied with respect to Inspector General Cunha. (Id. at 12).

The Court finds that the OIG is a critical witness as its investigation developed evidence which provides the grounds for the Town's cause of action. The OIG must speak through its officers. Therefore, Cunha or a subordinate Deputy Assistant Inspector General with appropriate knowledge of the investigation and authority to speak for the OIG must appear and testify in order to achieve a fair resolution of this dispute. See Bliss, 743 F. Supp. 2d at 30.

IV. CONCLUSION

For the foregoing reasons, the Motion is ALLOWED. All documents to be produced shall be subject to the proposed protective order which this Court hereby ADOPTS.


/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE