UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF GRAFTON,<br>    Plaintiff,<br><br>v.<br><br>PULTE HOMES OF NEW ENGLAND, LLC,<br>and HILLTOP FARMS DEVELOPMENT, LLC.<br>    Defendants. | CIVIL ACTION<br>NO. 12-10524-TSH |

## ORDER

**May 21, 2014**

Hennessy, M.J.

By Order of Reference dated December 18, 2013, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #50), this matter was referred to me for a ruling on Defendants' Motion to Compel the Production of Documents by the Office of the Massachusetts Inspector General ("OIG") (Docket #47). By separate Order of Reference dated January 8, 2014 pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #55), this matter was referred to me for a ruling on the OIG's Motion to Quash Defendants' Subpoena (Docket #52). Defendants have filed a response. (Docket #54). A hearing was held on the matter on May 16, 2014. These matters are now ripe for adjudication. For the reasons that follow, Defendants' Motion to Compel the Production of Documents by the OIG is ALLOWED and the OIG's Motion to Quash Defendants' Subpoena is DENIED.

I.   BACKGROUND

On February 17, 2012, the Town of Grafton (the "Town") filed suit against Pulte Homes of New England, LLC ("Pulte") and Hilltop Farms Development, LLC ("Hilltop") in

Massachusetts Superior Court. (Docket #1-1 at 6). The Town asserted several claims including breach of contract and violation of Massachusetts General Laws Chapter 93A. These claims are based on the alleged breach of a Regulatory Agreement dated June 28, 2004 (the "Agreement") between Hilltop and the Salem Five Cents Savings Bank governing a 256-unit affordable housing development (the "Project"), of which the Town is a beneficiary. (Id. at 11). Pursuant to the Agreement, Hilltop must pay to the Town any profits from the Project exceeding twenty percent of the Project's total development costs, for deposit in the Town's affordable housing trust fund. (Id.). The Town alleges that the Project's profits exceeded twenty percent by at least $17 million, but that Hilltop has failed and refused to pay any of this amount to the Town. (Id.).

The facts underlying the Town's claim were uncovered by the OIG, which provided the Town with a twenty-five-page report ("the IG Report") on November 7, 2011, summarizing a two-year investigation into the Project. (Id. at 14). Through the course of the OIG's investigation of the Project, the OIG exercised its summons authority to obtain documents from the Town, Hilltop, and Pulte, in addition to several other organizations not parties to the present litigation. (Docket #43 at 5). The IG Report concluded that Pulte and Hilltop improperly withheld between $8 and $17 million in excess profits from the Town. (Docket #1-1 at 14). In the IG Report, the OIG recommends that the Town "should consider taking appropriate civil actions in order to pursue the excess profits associated with the [Project[." (Id. at 74).

On March 22, 2013, Pulte and Hilltop removed the action to federal court on the basis of diversity jurisdiction. (Docket #1).

On November 9, 2012, the Town served a deposition subpoena on the Inspector General, requiring his presence at a deposition on November 19, 2012. (Docket #35 at 20). The subpoena also directed the Inspector General to bring to the deposition "[a]ll documents concerning your

2

office's investigation into Chapter 40B developer profits from the Hilltop Farms project in Grafton, Mass., which was the subject of your office's report to the Grafton Board of Selectmen dated November 7, 2011, excepting any privileged documents including any work product." (Id.). The OIG is not a party in the suit. In July of 2013, the OIG explained to the Town that, due to the statutory criminal penalties that attach to OIG employees who disclose the OIG's statutorily confidential documents, it would not be able to provide records without a court order and without the court's entry of a protective order. (Docket #43 at 2). After the OIG notified the Town that it would not produce the requested documents even with a protective order, the Town filed a motion to compel on August 28, 2013. (Docket #35). On November 4, 2013, the Court granted the motion to compel and adopted the parties' proposed protective order. (Docket #45). The order contained the following statement concerning work product:

> In its response to the present motion, the OIG states that it understood that the subpoena at issue does not request the internal work product of OIG employees that led to the OIG report and that the Town agrees. (Docket #43 at 3 n.1). However, the OIG asserts that Pulte and Hilltop have indicated that they will subpoena the OIG's internal investigative documents should the OIG not produce them now. (Id.). The OIG asserts that this work product is protected from disclosure by federal and state privileges. (Id. at 3). The Court will not address this issue as the matter is not ripe for review at this juncture. The parties are not arguing that the subpoena at issue applies to work product and the Court will not issue an advisory opinion on the validity of a potential subpoena.

(Docket #45 at 7).

On November 7, 2013, Defendants served a subpoena duces tecum and 30(b)(6) subpoena on the OIG, requiring attendance at a deposition on November 18, 2013, and the production of the following documents:

> 1. All documents and communications concerning the Project, the Regulatory Agreement, and/or the IG Report not produced in response to the Subpoena issued by the Town of Grafton to the Office of the Inspector General dated November 9, 2012.

2. To the extent not produced in response to Paragraph 1 above, the IG Report as defined herein.

3. To the extent not produced in response to Paragraph 1 above, internal documents concerning the Project, the Regulatory Agreement, and/or the IG Report, including, but not limited to, all memoranda, worksheets, spreadsheets, notes, audio recordings, visual and/or video recordings, communications of any kind maintained in any form, and all items of correspondence.

(Docket #48-2).

On November 18, 2013, the OIG served objections to the Defendants' subpoena. (Docket #48-3). The OIG objected to producing any documents requested in Defendants' subpoena on the basis that (1) the requests are vague, overly broad, and unduly burdensome; (2) the requests seeks documents that are protected by the attorney-client privilege, investigatory privilege, statutory confidentiality, or any other applicable privilege or immunity; and (3) the requests seeks documents outside the scope of discovery because the documents are not relevant to either party's claim or defense. (Id.). On December 5, 2013, Defendants filed the motion to compel. (Docket #47). On December 19, 2013, the OIG filed a motion to quash the Defendants' subpoena, arguing that the subpoenaed documents are not relevant, are confidential pursuant to state statute, and are privileged pursuant to the state common-law investigatory privilege and that certain specific documents are also protected by the attorney-client privilege. (Docket #52). A hearing was held on the matter on May 16, 2014.

II. STANDARD

Unless otherwise ordered by the court,

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if

the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Relevant evidence is defined in Federal Rule of Evidence as evidence having "any tendency" to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence.

The scope of discovery, however, differs significantly between parties and nonparties. The "relevance" standard of Rule 26 does not apply to nonparties. Bio-Vita, Ltd. v. Biopure Corp., 138 F.R.D. 13, 17 (D. Mass. 1991). "To obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." Bio-Vita, 138 F.R.D. at 17; see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

Furthermore, a court shall quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]"[1] Fed. R. Civ. P. 45(d)(3)(A)(iii). "The party moving to quash a subpoena in a civil trial bears the burden of persuasion." Demers v. Lamontagne, 43 Fed. R. Serv. 3d 1102, at *4 (D. Mass. 1999) (citing Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996)); Sorenson v. H & R Block, Inc., 197 F.R.D. 199, 203 (D. Mass. 2000).

---

[1] The OIG does not seek to squash the subpoena under any other provision of Federal Rule of Civil Procedure 45(d). (Docket #53 at 4).

III. ANALYSIS

A. Timeliness of the Motion to Quash

Defendants argue that the OIG's motion to quash is untimely and, accordingly, should be struck. (Docket #54 at 12).

Pursuant to Federal Rule of Civil Procedure 45(d)(3), a motion to quash a subpoena must be "timely" filed; however, the term "timely" is not defined in the rule. In general, courts have read the timeliness requirement to mean within the time set in the subpoena for compliance. See e.g., Sterling Merch., Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 85 (D.P.R. 2006) (discussing two lines of cases that interpret a motion to quash pursuant to Federal Rule of Civil Procedure 45(d)(3) as timely if served either fourteen days after service or within the time for compliance); United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 278 (D.D.C. 2002).

The Defendants served their subpoena duces tecum and 30(b)(6) subpoena on the OIG on November 7, 2013 with a compliance date of November 18, 2013. (Docket #48-2). However, on November 13, 2013, the parties, by email, agreed to postpone the deposition scheduled for November 18, 2013 to a mutually agreeable date.[2] (Docket #54-1). The OIG filed the motion to quash on December 19, 2013, forty-two days after service of the Defendants' subpoena but prior to the modified date for compliance. The Court finds that, due to the parties' agreement to re-schedule the deposition to a future date, the motion to quash is not untimely.

B. Relevance

Defendants assert that, because the Town relies exclusively on the IG Report in support of its claims against Defendants, there can be no question that the documents at issue are relevant

---

[2] Defendants do not discuss the effect of the postponement of the deposition on the issue of the timeliness of the Motion to Quash.

to their defenses to the Town's suit. (Docket #48 at 7-8). Specifically, Defendants state that, although the IG Report contains broad conclusions about the cost certification process used to determine the profits of the Project, the IG Report fails to provide specific support for its conclusions including any evidence of the accounting methodology utilized in the IG Report. (Docket #54 at 6). Defendants argue that, without access to the information that was used to create the IG Report, they cannot test the IG Report's accuracy and veracity. (Docket #54 at 7). The OIG challenges the Defendants' relevancy argument stating that, because it is not the entity suing Defendants, there is no need for Defendants to defend themselves against the IG's Report and, instead, Defendants need to respond to the Town's causes of action. (Docket #53 at 6). The OIG argues that Defendants do not need the OIG's work product to calculate their own excess profits and such calculations can be made from invoices and sales contracts. (Docket #53 at 6).

At the hearing, the Town admitted that they used the IG Report as the basis of its complaint. (Docket #1-1 at 15, 23). In fact, the Town stated that it would fight "tooth and nail" to get the IG Report into evidence. Information concerning how the OIG came to the conclusions stated in the IG Report is therefore relevant to both the Town's claims and the Defendants' defenses. While it is true that Defendants can calculate their profits from sources other than the OIG's work product, they are entitled to examine the basis for the Town's claims. This is particularly true given the additional weight that a jury may accord an official report. Because the IG Report plays such a significant role in this case, the Court finds that Defendants' need for discovery outweighs the burden the production places on the OIG.

C. Confidentiality

Pursuant to Massachusetts General Laws chapter 12A, section 13, "All records of the office of inspector general shall be confidential unless, it is necessary for the inspector general to

7

make such records public in the performance of his duties[.]" Employees of the OIG are subject to the same confidentiality mandates as the Inspector General, and should they violate these mandates they "shall be punished by imprisonment in a jail or house of correction for not more than six months or by a fine of not more than one thousand dollars." Id.

In Bliss v. Fisher, Judge Harrington declined to interpret Massachusetts General Laws chapter 12A, section 13 as creating a privilege. Bliss, 743 F. Supp. 2d at 28, 28 n. 1. This Court agrees with his analysis.[3] However, a court is required to quash or modify a subpoena not only where it requires disclosure of privileged matter, but also where it requires disclosure of "other protected matter." Fed. R. Civ. P. 45(d)(3)A)(iii).

The OIG argues that the Court must quash the subpoena as the documents sought are "otherwise protected" under Federal Rule of Civil Procedure 45(d)(3)(A)(iii) pursuant to Massachusetts General Laws chapter 12A, section 13. The OIG asserts that requiring production of the subpoenaed documents will hamper future investigations by inhibiting the OIG's ability to investigate, analyze, and report. (Docket #53 at 7). The OIG argues that the confidentiality provided by the statute offers assurance to the OIG's informants and witnesses that the OIG will not reveal their identities. (Docket #53 at 7). The OIG also states that "[c]onfidentiality is critical to conducting investigations, analyzing data, and candidly discussing and recording thoughts, hypotheses, and conclusions about a case." (Docket #53 at 7). Defendants assert that this argument is not relevant to the issue at hand as it is Defendants, the subject of the OIG investigation, that are seeking the documents, not a third party who is looking for information about another person or entity, and the documents supplied to the OIG by third parties are already the subject of an order requiring production. (Docket #54 at 8). Defendants also argue

---

[3] The Court notes that, to date, no Massachusetts authority has interpreted Massachusetts General Laws chapter 12A, section 13.

8

that, given the fact that the OIG has published the IG Report, the OIG has no basis to withhold from Defendants information concerning the process by which the OIG came to the conclusions contained in the IG Report, and allowing the OIG to do so would prejudice the Defendants in the defense of the Town's claims. (Docket #54 at 9).

The OIG has a broad mandate to "act to prevent and detect fraud, waste and abuse in the expenditure of public funds[.]" Mass. Gen. Laws ch. 12A, § 7. Although the inspector general has the authority to institute a civil recovery action where it has discovered fraudulent acts and believes civil recovery proceedings may be appropriate, Mass. Gen. Laws ch. 12A, § 11, the OIG represented at the hearing that it has never brought a civil recovery action. In the IG Report, the OIG recommends that the Town "should consider taking appropriate civil actions in order to pursue the excess profits associated with the [Project]." (Docket #1-1 at 74). Hence, the OIG is relying on the Town to enforce its mandate. In fact, the Town stated at the hearing that it pursued this action on the basis of the IG Report.

An exception to the confidentiality provision of Massachusetts General Laws chapter 12A, section 13 exists when "it is necessary for the inspector general to make such records public in the performance of his duties[.]" The Court finds that this lawsuit furthers the OIG's mandate. This case, regardless of outcome, will help determine whether the Projected is tainted by fraud. If fraud is uncovered, a judgment against any party involved in committing it may serve as a deterrent to other parties who would seek to divert public funds. Further, although not before the Court at this time, the Court believes that issues of fundamental fairness would preclude the Town from introducing the IG Report as evidence if Defendants were not able to adequately test the conclusions and findings therein. At the hearing, the Town stated that the IG Report is an important piece of evidence that it would fight "tooth and nail" to have admitted.

Thus, to the extent that these documents allow Defendants to test the conclusions and findings within the IG Report, the Court finds that their disclosure is necessary to the performance of the inspector general's duties. Hence the disclosure of these documents falls under the exception to the confidentiality provision of Massachusetts General Laws chapter 12A, section 13 and, therefore, these documents are not "otherwise protected" under Federal Rule of Civil Procedure 45(d)(3)(A)(iii).

D.      Privilege

Pursuant to Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." See Krolikowski v. Univ. of Mass., 150 F. Supp. 2d 246, 248 (D. Mass. 2001) ("According to Fed. R. Evid. 501, if federal substantive law controls a civil case, federal common law would control the question of privilege. If however, state substantive law controls, as in diversity cases, a federal court is to use applicable state law privilege."). The instant case was removed to federal court on the basis of diversity jurisdiction. (Docket #1). The action involves no federal claims. (See Docket #1-1 at 11-24). Therefore, state law governs the question of privilege.

"Unless otherwise required by law, information given to governmental authorities in order to secure the enforcement of the law is subject to disclosure only within the discretion of the governmental authority." Massachusetts Guide to Evidence, § 515 (Supreme Judicial Court, 2013). The Massachusetts Supreme Judicial Court explained the rationale for this rule thusly:

> It is the duty of every citizen to communicate to his government any information which he has of the commission of an offence against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery

> of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.

Worthington v. Scribner, 109 Mass. 487, 488-89 (1872); see Dist. Att'y v. Flatley, 419 Mass. 507, 510 (1995) (stating that no subsequent Massachusetts decision modifies or abrogates Worthington). Thus, the Court previously found that the documents subpoenaed by the Town's November 19, 2012 subpoena were absolutely protected from disclosure by the state investigatory privilege, which could be waived only by the OIG.[4] (Docket #45 at 6).

The documents subject to the November 19, 2012 subpoena to the OIG were provided to the OIG by the litigants and other outside parties. (Id. at 2, 4). At the hearing, the parties represented that all such documents have been produced. Pursuant to the subpoena at issue here, Defendants seek documents produced by the OIG itself. These documents are not subject to the state investigatory privilege. That privilege applies to "information given to governmental authorities in order to secure the enforcement of the law." Massachusetts Guide to Evidence, § 515 (Supreme Judicial Court, 2013). The rationale behind the privilege, to encourage citizens to communicate to the government information concerning the commission of an offense, would not be served by extending it to the internal work product of the OIG. However, in the event that the documents subject to the instant subpoena do implicate the state investigatory privilege, the OIG is free to assert that privilege on a document-by-document basis but must produce a privilege log.

---

[4] The Massachusetts Legislature has adopted a public records statute, which requires public access to various records and documents in the possession of public officials unless otherwise exempt. Mass. Gen. Laws ch. 66, § 10. However, "[a]ll records of the office of inspector general . . . shall not be public records as defined in section seven of chapter four." Mass. Gen. Laws ch. 12A, § 13.

D.  Deposition Subpoena

In its motion to quash, the OIG asks the Court to limit deposition testimony only to topics compelled or not quashed and that the Court protect the OIG testimony with the agreed-upon protective order. The Court finds that the deposition testimony is subject to the protective order adopted by Judge Hillman on February 3, 2014 and finds that the deposition testimony shall be limited as requested by the OIG.

IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel the Production of Documents by the OIG (Docket #47) is ALLOWED and the OIG's Motion to Quash Defendants' Subpoena (Docket #52) is DENIED. To the extent that the subpoenaed documents allow Defendants to test the conclusions and findings within the IG Report, they are relevant and must be produced. If the OIG seeks to assert any form of privilege with respect to these documents, such privilege must be asserted on a document-by-document basis and the OIG must submit a privilege log. The production of any documents or testimony subject to the subpoenas at issue shall be subject to the protective order adopted by Judge Hillman on February 3, 2014.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE